Peter O. Hughes, Esq.
Valerie L. Weiss, Esq.
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
peter.hughes@ogletree.com
valerie.weiss@ogletree.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---------------------------------------------------

| | | |
|---|---|---|
| KIMBERLY ANTHONY, | : | Hon. John Michael Vazquez, U.S.D.J |
| | : | Case No. 2:19-cv-17074-JMV-JBC |
| Plaintiff, | : | |
| | : | **DECLARATION OF VALERIE L.** |
| v. | : | **WEISS IN SUPPORT OF** |
| | : | **DEFENDANTS' MOTION TO DISMISS** |
| GAF – AASHNA CHOUDHARY, | : | |
| PATRICIA HENDERSON, ELIZABETH | : | |
| BREZINSKI, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------

I, Valerie L. Weiss, being over the age of 18, declares as follows:

1.      I am an attorney at law of the State of New Jersey and represent Defendants Building Materials Manufacturing Corporation ("BMMC") (improperly pled as GAF), Aashna Choudhary, Patricia Henderson, and Elizabeth Brezinski (hereinafter, "Defendants"). I submit this Declaration in support of Defendants' Motion to Dismiss Plaintiff's Complaint.

2.      I make this Declaration based upon my personal knowledge and review of the case records.

3.      Attached hereto as Exhibit A is a true and correct copy of the Summons and the Complaint received at the offices of BMMC on January 31, 2020. The version of the attached

Complaint differs from the version filed as ECF No. 1, as there is handwriting of the letters "GAF" as Defendant No. 4 in Section I(B) of the Complaint.

I hereby declare under penalty of perjury that the foregoing statements made by me are true and correct.  Executed on March 6, 2020 at Morristown, New Jersey.


*/s/ Valerie L. Weiss*
Valerie L. Weiss

42080925.1

# EXHIBIT A

20-151

gg
1/31/20
3:01pm

# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**KIMBERLY ANTHONY,**
*Plaintiff*

V.                                      **SUMMONS IN A CIVIL CASE**

**AASHNA CHOUDARY, ET AL.,**
*Defendant*

CASE
NUMBER: **2:19–CV–17074–JMV–JBC**

2020 JAN 31 PM 1:10

RECEIVED
COUNTY OF MORRIS
OFFICE OF THE SHERIFF

TO: *(Name and address of Defendant):*

GAF (Legal Department)
1 Campus Drive
Parsippany-Troy Hills, NJ 07054

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States Agency, or an office or employee of the United States described in Fed. R. civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**s/ WILLIAM T. WALSH**
CLERK



**ISSUED ON 2019–11–07 12:25:21**, Clerk
USDC NJD

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me(1) | DATE |
|---|---|
| NAME OF SERVER *(PRINT)*     . | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

☐ Name of person with whom the summons and complaint were left:_____

☐ Returned unexecuted:_____

_____

_____

☐ Other (specify) :_____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.


Executed on _____            _____
                        Date                        *Signature of Server*

                                    _____
                                    *Address of Server*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
### for the
### Newark District of New Jersey
### Division

|  |  |
|---|---|
| Kimberly Anthony | Case No. _____ |
| Plaintiff(s) | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)*  ☐ Yes  ☒ No |
| -v- |  |
| GAF - Aashna Choudary, Patricia Henderson, Elizabeth Brezinski |  |
| Defendant(s) |  |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* |  |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Kimberly Anthony |
| Street Address | 4 Macspar Drive |
| City and County | Randolph, Morris County |
| State and Zip Code | NJ 07869 |
| Telephone Number | 201-787-4702 |
| E-mail Address | jeterdog2004@gmail.com |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Aashna Choudary |
| Job or Title *(if known)* | HR Manager |
| Street Address | 1 Campus Drive |
| City and County | Parsippany, Morris County |
| State and Zip Code | NJ 07054 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Patricia Henderson |
| Job or Title *(if known)* | Vice President - Assistant Controller |
| Street Address | 1 Campus Drive |
| City and County | Parsippany, Morris County |
| State and Zip Code | NJ 07054 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Elizabeth Brezinski |
| Job or Title *(if known)* | Accounting Manager |
| Street Address | 1 Campus Drive |
| City and County | Parsippany, Morris County |
| State and Zip Code | NJ 07054 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | GAF |
| Job or Title *(if known)* | (company) |
| Street Address | 1 Campus Drive |
| City and County | Parsippany, Morris County |
| State and Zip Code | NJ 07054 |
| Telephone Number | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

---

E-mail Address *(if known)* _____

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | GAF |
| Street Address | 1 Campus Drive |
| City and County | Parsippany, Morris County |
| State and Zip Code | NJ 07054 |
| Telephone Number | 973-628-3000 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*: _____

☐    Relevant state law *(specify, if known)*: _____

☐    Relevant city or county law *(specify, if known)*: _____

Page 3 of 8

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

---

### III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☒    Termination of my employment.

☐    Failure to promote me.

☒    Failure to accommodate my disability.

☒    Unequal terms and conditions of my employment.

☐    Retaliation.

☐    Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

July 17, 2018

C.    I believe that defendant(s) *(check one)*:

☐    is/are still committing these acts against me.

☒    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐    race         _____

☐    color        _____

☐    gender/sex   _____

☐    religion     _____

☐    national origin  _____

☐    age *(year of birth)*  _____  *(only when asserting a claim of age discrimination.)*

☒    disability or perceived disability *(specify disability)*

Diagnosed and disclosed severe
depression/anxiety/bipolar

E.    The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

I was hired by GAF in the newly created role of Lead Accountant, paying $100,000 annually plus a 10% annual bonus, on March 21, 2018 (start date). Prior to accepting the position, I communicated that I had an 8 month old son who would be newly starting daycare and I would need to work 8am-5pm (so anything related to this should not be considered a factor in performance, as GAF is trying to say). I was told the hours were 8:30am-5pm, so that would be no problem. I worked in the Accounting department for the remainder of March, April, and May with NO PERFORMANCE ISSUES of which I was informed. My supervisors Elizabeth Brezinski and Patricia Henderson were very intense and very critical of many employees in the department, but did not raise ANY performance issues with me.

At some point in April or May (2018), my colleague Susan Kirk, Senior Accountant, was terminated after being on a performance improvement plan for an extended time, and being given feedback on her performance in numerous meetings. Similarly, my colleague Lori Trujillo was terminated the day she returned from disability leave. Liz had communicated with me that both would be terminated prior to doing so, openly doubting the legitimacy of Lori's disability and mocking her for having her mother inform the department of her leave. She provided many details of Lori's situation, which I believe violated privacy laws (she told me she initially called out for a viral ear infection, which Liz said was not a legitimate illness, and subsequently her mother called her out for being hospitalized with a "mental breakdown" of some sort, she then said that Lori would surely return "when the disability checks stopped coming" therefore making it clear that she doubted the legitimacy of mental disability leaves).

Prior to accepting my position, I communicated that I would be taking a vacation for one week in May. I was approved to take the requested week off (May 14, 2018 - May 18, 2018). On May 13, 2018 I was admitted in the emergency room for an emergency appendectomy. In the ER, I emailed Patricia and Liz to tell them that I would still be out for the week, but rather than travelling on a vacation, I'd be recovering from surgery. I told them I'd let them know how long the surgeon said I needed. The surgeon then told HR (written note) that I needed two weeks recovery time, so I said I would take vacation or sick days, whatever they preferred (I had been told when I was hired that there were unlimited sick days). They have subsequently referred to this 2 week recovery time as a disability leave. I didn't request disability and I know it wasn't formally treated as disability leave, so I don't think that two week time period should be relevant to this case. I returned as outlined by my surgeon and immediately performed all job tasks that were required of me. I am only mentioning this because it is mentioned in GAF's letter to the EEOC, despite being irrelevant and completely unrelated to my actual disability.

In June 2018 I spoke with Aashna Choudary, HR Manager, to clearly outline my disability (bipolar, depression, and anxiety) and concerns that I was having at the time about a potential flare up in my symptoms (considered postpartum depression at the time and also related to being unable to be properly medicated while breastfeeding). I have been diagnosed with depression, anxiety, and bipolar II since 2010. I was functioning well (although visiting a therapist) for the 2-3 years leading up to 2018, but was having a severe "flare up" of depression and anxiety after having my baby in 2017 and returning to work. I told Aashna that I had been seeing a doctor and that I had been assessed at High Focus Centers in Parsippany and could potentially need to take a leave of absence to attend an Intensive Outpatient Program for my depression and anxiety. She said my health should be my number one priority. I asked if I could be at risk of losing my job, since Lori had been terminated after taking disability leave, and she explicitly told me that my situation was different from Lori's and Lori had only been terminated because she had "documented performance issues" prior to her leave of absence. She told me that she had no knowledge of any performance issues with me and so I shouldn't worry. I met with her a second time to discuss this same topic, and followed up with an email confirming what we had spoken about. Never in an email did she say that my job would be protected, because I wasn't eligible for FMLA leave, which I fully understand, but she did tell me that I did not have to worry about any performance issues.

Continued on attached page.

## Continuation of (E)

On June 19, 2018 I started my disability leave and my medical provider completed the Interactive Process with GAF, outlining her thoughts on the potential length of my leave/accommodations needed. My doctor at High Focus Centers, where I was enrolled in the Intensive Outpatient Program, communicated that she thought I would need a month of leave at that time. Subsequently, she communicated that I would need several months of leave, after I spent more time at the program and the severity of my condition became more apparent to her. I was not involved in any of this communication, although I tried to ensure that the doctor communicated timely with GAF. Had I known that I was at risk of losing my job, I would have attempted to work early against medical advice. When my doctor told GAF that I would need additional months of leave, GAF emailed me (July 17, 2018) and informed me that my position was being opened for new applicants. They stated that my absence created an "undue burden" for the business and therefore my job was no longer protected. They did not at any point elaborate on the undue burden that was created for the company (this is a large multinational company and I was employed in a position that was newly created in the department, the department also had terminated and released numerous employees in the month leading up to my leave, indicating that our department was actually overstaffed at the time). There was never any documentation of other employees needing to work longer hours or any tasks that could not be completed as a result of my absence. I continued my treatment program until ultimately in November or December my medical provider told me that I would be clear to return to work in mid December. By this point, GAF had told me that they had replaced me in my position. They later told me that they had replaced me in August, and then removed my position entirely in October, which made me think that they may have realized they broke a rule in opening up my position in July, and perhaps they were trying to make it look like they just reorganized the department and I would have lost my position regardless of my leave. However, prior to my disability leave, I had been told multiple times by Liz and Patricia that they had plans to reorganize the department, with me playing a key role. They had indicated that their plan was to promote me to an Accounting Manager role to replace Liz and have her assume new responsibilities. If in their reorganization, they eliminated the Lead Accountant role and created an Accounting Manager role, it should be understood that that would have been my position by the end of 2018, assuming no performance issues.

In response to my claim with the EEOC, GAF never mentioned any undue burden experienced in my absence, nor did they mention restructuring the department. GAF responded stating that I had extensive performance issues and they were "planning" to put me on a performance improvement plan. They even said they met with me numerous times about performance issues. I was never told about any issues with my performance. I had one meeting with Liz where she asked me about hour expectations (I noted that I was meeting/exceeding the hours outlined in the application process and all of my tasks were being completed timely). The one piece of performance feedback I did receive in this meeting was that I should "say hi" more (she was unaware of my depression/anxiety, although HR was aware). With regards to the saying hi feedback, she told me the next week that I had improved, because I take performance feedback seriously and had I been given any other performance feedback, I would have absolutely taken it to heart (and documented it). At no point did anyone even hint at a performance improvement plan. I was given no negative feedback on my work quality at any point. I was entrusted with additional responsibilities outside of my job description, with no issues. The only time Patricia made a comment that could be construed as negative feedback was one day when she said I should "be at my desk more", indirectly referencing my twice per day sessions in the lactation room where I was working while pumping breastmilk for my son (twice per day for 15 minutes – with my work laptop and doing work – adding 30 minutes to the end of the workday as well, to be safe).

Susan Kirk was terminated prior to my being terminated. She was on a lengthy performance improvement plan. I was never put on a performance improvement plan. GAF claims they terminated me based on my performance, yet I was not given the same treatment as a non-disabled employee in a comparable role. Susan was given a performance improvement plan because she was not on leave. GAF will say they couldn't give me an improvement plan because I wasn't at work, but a disability leave is a reasonable

accommodation for my illness. I am allowed to take a leave of absence to address severe mental illness. I should not have been denied the same treatment as other employees because I was first addressing my health before returning to work. My short tenure at the company is irrelevant. There is no length of service requirement for protection under the ADA.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

> *(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

   December 21, 2018

B.    The Equal Employment Opportunity Commission *(check one)*:

   ☐    has not issued a Notice of Right to Sue letter.

   ☒    issued a Notice of Right to Sue letter, which I received on *(date)*    6/12/2019        .

   *(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

   Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

   ☐    60 days or more have elapsed.

   ☐    less than 60 days have elapsed.

## V.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Salary - $100K per year plus benefits (50% match to 401k immediately vested, health insurance, life insurance, etc) - Thus far unemployed for 8 months - 8/12 x $100K = $66,667. Cost of loss of benefits = roughly $8,000 thus far, not factoring in the increase in my significant other's deductible by adding me to his insurance. I have been unemployed since my employment was terminated in December 2018. I have applied to at least 25 positions, including going on interviews that seemingly went well, but my short tenure at GAF is very hard to explain well in a job interview setting. My quick turnover at GAF makes me very undesirable as a job applicant for positions of the caliber that I used to successfully interview for. I was planning to stay at GAF longterm after a relatively short (1.5 year time at my previous position at Realogy). Multiple short periods of employment in a row on a resume are very hard to explain. In desperation, I have even tried self employment and working from home in areas such as selling products or pet sitting but costs have exceeded income thus far.

Additional & Punitive factors - We were planning to get pregnant in January 2019. In losing my health insurance and being added to my significant other's health insurance with a July 1 - June 30 insurance year, it would have been extremely costly to get pregnant in January, forcing us to delay these plans for 8 months (thus far). This has changed our entire plan for our family and our future. Our children won't be the same closeness in age. Our family dynamic will be permanently altered. Further, I have been unable to continue proper medical treatment for my depression and anxiety because I cannot afford it under my significant other's insurance (extremely high deductible for a family).

As someone with constant, debilitating anxiety and depression, nothing could hurt more than the shame of losing my job and then being told afterwards in a legal letter that it was due to poor performance about which I had never been informed. This has had a crushing impact on my self confidence. I have no doubt that this had impacted my ability to perform on job interviews and applications. The lasting impact of this is worth another year's salary at a minimum, if I could even put a number on it.

Total = $175,000

VI.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.    **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        8/9/2019

Signature of Plaintiff        _____

Printed Name of Plaintiff    Kimberly Anthony

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Newark Area Office

*Two Gateway Center, Suite 1703*
*283-299 Market Street*
*Newark, NJ 07102*
*Information Intake Group (800) 669-4000*
*Newark Status Line (866) 408-8075*
*Newark Direct Dial (973) 645-3842*
*Fax (973) 645-6768*

Kimberly Anthony
4 Mac Spar Drive
Randolph, NJ 07869

Re: EEOC Charge Number: 524-2019-00487
Anthony v. GAF

Dear Ms. Anthony,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the information and evidence you submitted.  You allege you were *discriminated because of disability.*

Respondent's position statement has been previously shared with you. You were provided with an opportunity to submit additional information and your rebuttal was received.

Based upon this analysis the Commission is unable to conclude that the information establishes a violation of federal law on the part of Respondent.  This does not certify that Respondent is in compliance with the statutes.  No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue.  Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge with 90 days of receipt of said notice. Otherwise, your right to sue will be lost.  Please contact Investigator Rosemary Tapia at (973) 645-6638 if you have any questions.

Sincerely,

6-12-19
Date

John Waldinger
Area Director

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: Kimberly Anthony<br>4 Mac Spar Drive<br>Randolph, NJ 07869 | From: Newark Area Office<br>283-299 Market Street<br>Two Gateway Center, Suite 1703<br>Newark, NJ 07102 |
|---|---|

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 524-2019-00487 | Rayba Watson,<br>Enforcement Supervisor | (973) 645-6021 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
John Waldinger,
**Area Office Director**

6-12-19
*(Date Mailed)*

Enclosures(s)

cc:    Valerie L. Weiss
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Avenue
Suite 400
Morristown, NJ 07960

| EEOC Form 5 (11/09) | | | |
|---|---|---|---|
| **CHARGE OF DISCRIMINATION** | Charge Presented To: | | Agency(ies) Charge No(s): |
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | FEPA | |
| | X | EEOC | 524-2019-00487 |

**New Jersey Division On Civil Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Kimberly Anthony | | 8/18/88 |

Street Address  City, State and ZIP Code

4 Mac Spar Drive, Randolph, NJ 07869

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| GAF | 500 or More | (973) 628-3000 |

Street Address  City, State and ZIP Code

1 Campus Drive,  Parsippany, NJ 07054

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address  City, State and ZIP Code

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|---|
| | | Earliest | Latest |
| RACE    COLOR    SEX    RELIGION    NATIONAL ORIGIN | | 12/17/18 | 12/17/18 |
| RETALIATION    AGE    X DISABILITY    GENETIC INFORMATION | | | |
| OTHER *(Specify)* | | CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working for the above employer on March 21, 2018 in the position of Lead Accountant.  In June 2018 I informed Aashna Choudary, HR about my disability and that my doctor had recommended I take disability leave.  I was informed that as per company policy, I could not take leave during the first 90 days of my employment.  As such, I commenced my leave on June 18, 2018.  Respondent provides 6 months of Short Term Disability, handled by Liberty Mutual.  At the time I commenced leave, my doctor had stated that I would need one month off, and we would then reassess to determine how much additional time, if any I would need.  My doctor later communicated with Liberty Mutual I would need an additional 3-4 month of leave.  At this time, Respondent opened up my position and filled it with another individual in August 2018.  I was informed that upon my return I would be placed in an alternate position.  My leave was set to end December 17, 2018.  In early December I was told that I was being terminated.  I was not offered a comparable job and my position was not kept for me.  During this time, the position of Lead Accountant was eliminated entirely, and the individual hired to replace me was let go.  Given the above, I believe I have been discriminated against due to my disability in violation of the Americans with Disabilities Act of 1990 and ADA Amendments Act of 2008. *No negative perf. feedback or reviews. Told in May about high hopes for my progression within dept.*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | *Kim Anth  8/8/19*  SIGNATURE OF COMPLAINANT |
| *8/8/19*  *Kim Anth*  Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

*Filed with EEOC in response to GAF's response*

Kim Anthony v GAF Charge 524-2019-00487

Complainants initial response to GAF's response statement

Hi – This is a response to specific points in the GAF respondent statement.

As an overall statement, in order to not have a protected leave of absence under the ADA, GAF would have to show that my absence caused undue burden on the business. They have not attempted to show this, indicating that they are unable to show how the absence of a new employee for a few months could cause undue burden on a business of that size, especially in a department undergoing a staffing overall and having frequent turnover. They communicated to me on July 17 that my absence at that point was causing an undue burden so my position was being released. They have not explained how this was the case.

Additionally, they need to show that I was not treated any differently from other employees based on my disability and my requested accommodation. They terminated multiple employees from the Accounting department prior to my leave. Sue Kirk was terminated while I was employed in the department. She was given negative performance reviews and was placed on a performance plan leading up to her termination. These things never happened for me because of my absence, so I was not given the same termination process as an employee without a disability. Lori Trujillo was also terminated while I was employed in the department. I spoke to HR (Aashna Choudary) about her termination prior to taking my leave, because she was terminated the day she returned from a disability leave. I asked whether I would be ask risk for termination like she was. I was explicitly told that Lori had pervasive performance issues and that was the reason for her termination.

"On multiple occasions during the first two months…" – This statement claims that I was "warned" about not meeting expectations multiple times. To the contrary, I was never given this feedback. I certainly was never given a warning. A warning would be documented, wouldn't it? Do they have a documented warning that was issued to me about my performance? I did have ONE meeting with Liz Brezinski during which she did ask me if the job expectations were different from those described during the interview process (not five meetings as the letter erroneously outlines – we may have met 5 times about work, but job expectations were only discussed once). I responded that the job requirements were as described, although I was having trouble reconciling the hour expectations compared to what had been communicated to me prior to accepting the job offer. I typically arrived at my desk between 8:30 and 8:45. Liz and Trish had told me the hours of the company are flexible as long as you get your work done and HR specifically told me the company hours are 8:30-5 with an hour long lunch. I was working 8:30-5:30 with an hour lunch typically, plus finishing additional work at home after picking my son up from daycare. Liz and all other department members should be able to show you emails from me completing work at late hours of the night and/or early hours before arriving at work. I say that the expectations were inconsistent with those communicated during the interview process because prior to being hired, I double checked hour requirements, knowing that I had restrictions based on my son's daycare. I spoke to Kim in recruiting and was reassured that the hours are 8:30-5 with an hour lunch. I then spoke to Liz directly on her cell phone and she confirmed the hours were 8:30-5 but lately they have been working later or arriving earlier, but they expected once I was hired the hours would be 8:30-5. I communicated that I would always need to leave prior to 6 to pick up my baby from daycare. She said that was 100% fine. Whenever an issue

arose where my son was sick at daycare Liz was very supportive of my leaving early to go get him. She specifically said it was fine because I was getting all of my work done. There were instances after my emergency appendectomy (referenced below) that Trish and Liz were clearly displeased with me and started to ask me to stay past 7pm during month-end close. I was explicitly told during the interview process that this would not be required, but I did stay past 7pm the month that they first asked me to, which was very distressful to me as a new mother suffering from postpartum anxiety and depression and unable to pick up my son from daycare. This request definitely worsened my condition, but I did do what they asked, because I did not want to have bad performance. Again, at no point did anyone tell me that anything related to hours or picking up my son from daycare was causing me to have bad performance.

Liz did meet with me frequently (maybe these are the 5 meetings to which they are referring) complaining about other employees' poor performance (naming Sue Kirk, Chris Golio, and Lori Trujillo specifically and openly mocking them for their poor performance), but NEVER did she say that I had poor performance. I was never given any negative performance feedback. Can they show an instance where they gave me negative performance feedback? Can you compare this to how they reviewed the performance of non disabled employees who were terminated? I am sure Sue Kirk was on a formal performance improvement plan prior to being terminated.

It says that Trish Henderson met with me on April 9th and 10th about my performance issues. On April 9th and 10th, Liz had not yet been staffed on the agility project they refer to in the same paragraph. She was not staffed on that project until the end of May. If Trish met with me on April 9th and 10th it was about performance expectations and/or her high hopes for me in the department. She repeatedly told me they had high hopes for my speedy advancement in the department. She also met with me to criticize other employees (Sue, an intern Vinny, a staff accountant named Chris, all of whom she openly called completely incompetent and failing to meet her expectations). There is no way that in either of those meetings she communicated anything to me about my own performance because I had just started 2 weeks prior and had not even been assigned anything significant yet (I was still being trained on the systems at that point), so there is no way she could have been disappointed with me at that point. If she was, I had absolutely no idea and was never given anything but positive feedback about my performance and their expectations for me. If anything, she may have checked with me about my son being sick at daycare and my needing to leave early once or twice to pick him up, before finishing my work at home (my son was 8 months old and put in daycare for the first time, so he became frequently ill and my fiancé and I rotated picking him up from daycare when he became sick). I don't know what to say about her claiming to have been planning to tell me about a performance plan on June 19th except that that seems really convenient that it was the day I went out on leave. I was not previously told by her that I had any performance issues except that I should "say hi in the morning" more often. I subsequently was told by Liz Brezinski that I had significantly IMPROVED in the "saying hi" area, which contradicts their statement that I did not show any improvement.

There is a paragraph about my requesting a disability leave on May 14th. This is inaccurate. Prior to accepting my job offer, I told GAF that I had a scheduled VACATION the week of May 14th and would be out for the week. They approved this vacation before I was hired. They should be able to provide an email from February/March where they approved this week of vacation for May 14th. Then the night before my flight to California, I had an emergency appendectomy (May

13), ruining my plans. The first thing I did, while violently and endlessly vomiting in the ER, was to email Trish and Liz and inform them of my change in plans. I told them I would still be out for the week to recover and I would send a doctor's note immediately. The doctor said I needed to be out for 2 weeks, so I asked HR if I could use additional vacation time or sick time. I did not ask for disability leave. GAF grants employees sick days, so I figured I would use my originally planned 5 vacation days, plus 5 more vacation days or sick days. I did not ask for any sort of disability leave. Their emails should show that I did not ask for disability leave (I do not have access to my GAF email because they took my computer from me at the start of my disability leave, which made me nervous that they always intended to terminate me). They did inappropriately ask me to attend work dinners in the days following my appendectomy, against doctor's advice, which I told them I could not do. I think this made them irritated/upset with me, but I wasn't going to go against doctor's orders or torture myself when I was recovering from surgery. They also told me after my sick time that I had to "make up all the work I missed," which I did.

I subsequently returned to work, worked very hard to meet Trish and Liz's high expectations since they kept telling me about their high hopes for my advancement. I came into the office on the weekends to ensure I was meeting deadlines. Card swipes should show that I was in the office after hours and on weekends. I always kept Trish apprised of the status of projects. Liz should have numerous emails from me communicating the status and timing of projects. She had emphasized the need for constant communication, so I was always emailing her status updates and scheduling meetings to update her on the status of things. I also had a google sheet shared with her that showed the status of all of my projects. I ensured that it was updated even on the day I went on disability leave in June. Again, I was never told that I was lacking in communication or that there were any performance issues in this area.

After my son experienced a seizure on June 9th and I spoke to Trish about it, trying to be open and friendly since I was given the feedback about "saying hi" more often, she told me I needed to "toughen up." This, along with the stress of the seizure and my underlying decade long struggle with depression/bipolar, prompted me to schedule a meeting with Aashna Choudary in HR. I scheduled the meeting to discuss if I was eligible for any sort of leave for mental health reasons. I met with a psychologist and an evaluator at High Focus Centers in Parsippany and was told I should check into an intensive outpatient program. I first wanted to confirm with HR that I was eligible for something like that. Aashna assured me that my health was the #1 priority. I asked about Lori who had previously been terminated in our department the day her disability leave ended (I was openly told about Lori by Liz in a mocking way – liz told me they had an employee named lori who had a viral ear infection which "isn't a thing" according to liz and then her mom called her out for mental health reasons – liz alluded to the fact that she thought lori was lying and committing insurance fraud – I was uncomfortable with all of this because I know this information should be confidential and I also know that mental health disabilities shouldn't be mocked at all). **Aashna told me that Lori was terminated for performance issues and I shouldn't worry because I "had no performance issues documented."** She assured me that no one in the department as concerned with my performance. I followed up with her via email, attached in the EEOC portal called Gmail-Fwd – Leave question, to confirm that she had told me I shouldn't worry. I actually met with her twice. In her follow up emails she was much less explicit in saying I wouldn't lose my job, but out loud in person, she said I should not worry at

all and that I had no performance issues. You should be able to see two meetings she had with me in person in her calendar from June.

The timeline was this: met with Aashna in early June, was assured I shouldn't worry about losing my job, had a doctor fill out the interactive process paperwork, doctor said in June that I needed 3-4 weeks of leave, doctor was told to keep GAF updated of timing (I had no control over the timing of the doctor's communications with GAF), then on July 17th my doctor must have submitted new paperwork saying I needed additional months of leave, because I was doing very horribly mentally and couldn't function at all as an employee or a mother. At that time, GAF emailed me saying that my job was being opened to applicants **because I was placing an undue burden on the company**. They did not say I was being terminated for performance reasons, contrary to their entire response statement. They said I could apply to other positions when I was ready. I chose not to refute this at the time because I was doing so poorly in regards to my health and it just wasn't a healthy thing for me to start arguing about it. This of course was excruciatingly crushing to my mental state on top of already being chronically depressed. I continued at High Focus and subsequently with other psychologists and psychiatrists who kept updating GAF and Liberty Mutual about my status. It was determined that I would be out for the full length of my approved disability leave, which I understood was not job protection under FMLA, but should be protected under the ADA as long as it caused no undue burden on the business. My doctor told me in late November/early December that I would be fine to return to work on December 18th (I was happy about this because I could not under an circumstances miss any paychecks or lose my benefits such as health insurance, given my medical needs and the fact that I'm a new mother in a new house with a new baby who also had medical needs). I communicated that to HR at GAF as soon as I was informed by my doctor that I could return. When I asked them about positions that I could return to in December, that was when they told me I was effectively terminated on December 18th. They said my position had been eliminated. I think they probably renamed the position or reorganized the department and kept my general role but under a different name. Given the positive feedback I was constantly given about my work, I would have expected to be transitioned into a new position if the department was reorganized. **Liz even told me they planned to ultimately reorganize the group and have me as a Technical Accounting Manager, so maybe check if that position was created when the Lead Accountant position was eliminated because it should basically be my same position, but with a new name (you can compare job descriptions of my Lead Accountant role and the new Technical Accounting Manager position).**

It is correct that I have not applied to any other positions at GAF. When I looked in December, there were no comparable positions in Finance or Accounting. After filing an EEOC charge, I stopped looking at GAF openings figuring it would be a hostile environment to return to.

If a new position of Technical Accounting Manager was created – why wasn't I informed about it so I could apply? They say that they did create a position with a title like this and it was filled in November. If they knew my leave was ending in December, why couldn't they have held that position for me for one additional month? **Clearly they did not want me to return to the department because of the potential for additional accommodations being needed for my disabilities, since they had never communicated any performance issues whatsoever.** If I had performance issues, they should have allowed me to return and put me on a performance improvement plan like every other employee with performance issues.

In response to their listed three criteria for having an ADA claim (they say "at the very least" I don't meet the 2nd and 3rd criteria, implying that I also don't meet the first criteria of being disabled).:

1. is disabled within the meaning of the ADA – the ADA covers mental illnesses such as depression and bipolar. I was diagnosed as bipolar type II back in 2012 by at least 3 different medical professionals. In 2018, High Focus Centers determined I have severe anxiety and major depression. My therapist also said it could be classified as postpartum depression and anxiety. This documentation from High Focus was sufficient for Liberty Mutual to pay me 6 months of disability pay, so I imagine it is thorough and clearly concludes I have a legitimate disability. Liberty Mutual was very thorough in their vetting of my disability.

2. Is qualified – with or without reasonable accommodation – to perform the essential job requirements – I performed my job requirements without exception. I have been employed in the accounting profession for 8 years without any inability to perform job requirements. I was not told during my time at GAF that I failed to perform any job requirements. I was actually given additional job requirements outside of my job description. I was tasked with preparing the financial statements of the employee benefit plans, which I did without issue. They are suggesting that my inability to be present at GAF during my leave of absence means I wasn't performing an essential job function. I am arguing that my leave of absence was the reasonable accommodation that I was requesting, then I was due to return to work in December and would be fully capable of performing my job function.

3. Was discriminated against because of her disability – I am saying that I 100% was terminated solely as a result of taking this leave of absence, which they basically are agreeing with by saying that I was out for "28 weeks after working 11 weeks" as if that in and of itself is a reason to terminate me. In saying that, **they are saying they terminated me because of my need for a leave of absence. My disability caused my leave of absence, therefore I was terminated because of my disability.** There is no documentation of there being any issues with my performance during my time at GAF. I was repeatedly told how much they wanted me to be involved in more higher level aspects of the business, suggesting I was performing very well in my position. I was also repeatedly given the clear impression that Liz and Trish do not consider mental health illnesses to be legitimate disabilities. I was told by Liz that Lori Trujillo was faking her disability and that she would "come back when the checks stopped coming." They then fired her the day she came back. I was also told to "toughen up" when expressing how upset I was about my son's seizure. I'm sure they view depression as not being "tough" enough. The only time I ever was given feedback that I need to be at my desk more was not related to arriving late, leaving early, or taking long lunches, it was related to the fact that I was in the lactation room pumping twice a day for 20 minutes. One time when I was pumping someone came looking for me at my desk and Liz was clearly annoyed I wasn't there. Trish then told me I needed to be at my desk more when people were looking for me. This was clearly referring to the lactation room, nothing else. Using the lactation room is a protected thing for new mothers for the 1st year postpartum. **Most importantly, I was not put on a documented performance improvement plan, like all non-disabled employees at GAF are prior to being terminated for performance issues.**